## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**GENESIS HILL,**

     **Plaintiff,**

                                 **Civil Action 1:23-cv-406**
                                 **Judge Algenon L. Marbley**
     **v.**                             **Magistrate Judge Elizabeth P. Deavers**

**ARAMARK CORRECTIONAL**
**SERVICES, *et al.*,**

     **Defendants.**

### <u>REPORT AND RECOMMENDATION</u>

Plaintiff, Genesis Hill, an inmate at the Warren Correctional Institution ("WCI") who is proceeding without counsel, brings this civil rights action under 42 U.S.C. § 1983. Currently before the Court is a Motion to Dismiss filed by certain remaining Defendants employed by the Ohio Department of Rehabilitation and Correction ("ODRC"). (ECF No.18.)  In response to the Court's Show Cause Order dated December 13, 2024 (ECF No. 20), Plaintiff has made an untimely request to file a response in opposition. (ECF No. 21.) As set forth below, Plaintiff's Motion is **DENIED**. Further, it is **RECOMMENDED** that, pursuant to 28 U.S.C. 1915(e) and 1915A, Plaintiff's claims against the moving Defendants be **DISMISSED,** the Defendants' Motion to Dismiss be **DENIED** as moot, and that all remaining claims against any unserved Defendants be **DISMISSED** pursuant to Fed.R.Civ.P. 4(m).

### I.

Defendants filed their Motion to Dismiss on August 26, 2024. (ECF No. 18.) The certificate of service attached to the motion reflected that a copy was served on Plaintiff at his WCI address. (*Id*.) Further, the Court's docket reflects that notice of that filing was mailed to

Plaintiff at that same address.  (*Id.*)  The Notice of filing was not returned to the Court as undeliverable.  Plaintiff did not file a response to the Motion nor did he request an extension of time to do so.  Accordingly, by Order dated December 13, 2024, the Court directed Plaintiff to show cause within fourteen days as to why it should not treat the Motion to Dismiss as unopposed and why this case should not be dismissed for want of prosecution.  (ECF No. 20.) Plaintiff did not timely respond to the show cause order.  Instead, on January 10, 2025, Plaintiff filed a motion requesting an unspecified extension of time to respond to the Motion to Dismiss. (ECF No. 21.)   In making this request, Plaintiff does not state that he had not received a copy of the Motion to Dismiss when filed.  He also fails to set forth any other reason for his failure either to respond to that Motion in a timely manner or to request an extension of time for doing so. Given Plaintiff's failure to set forth good cause for an extension of time, his motion (ECF No. 21) is **DENIED.**

## II.

This case is one of six related cases filed by several inmates, four of whom currently are incarcerated at the Chillicothe Correctional Institution, Plaintiff who is incarcerated at WCI, and another Plaintiff currently incarcerated at the Trumbull Correctional Institution.  These cases all arise from an incident that occurred on November 27, 2021, when these same inmates were incarcerated at WCI.  The operative complaints in these cases, while not strictly identical, generally contain the same allegations.  Briefly, each Plaintiff alleges that an Aramark employee served food removed from a trash can to inmates in plaintiffs' housing unit and plaintiffs experienced minor short term gastrointestinal issues in the following days.

Similar to the other Plaintiffs, Plaintiff here names 28 defendants[1] and asserts a variety of claims.  Specifically, Plaintiff names as Defendants Aramark Correctional Services, Jane/John Doe "Aramark Supervisor," and Jane Doe known as "Ms. Woods," (collectively, "the Aramark Defendants").   Plaintiff also names as Defendants the Ohio Department of Rehabilitation and Correction ("ODRC"), and numerous ODRC employees, including Wanza Mitchell-Jackson, Isaac Bullock, Sgt. Maggard, Unit Manager Williams, Unit Manager Macintosh, Case Manager Kearns, Captain David Agee, Captain Back, Lt. Tatman, Lt. Saunders, C.O. Cook, C.O. Wells, C.O. Ms. S., Ms. Morris, Jane Doe Health Care Administrator, Nurse Practitioner Sky, Nurse Practitioner Rachel, John Doe Physician, C.O. Penunzio, Deputy Warden Luneke, C.O. Moody, Aramark Worker Ms. Moody, C.O. Epperson, and C.O. Farmer (collectively, "the ODRC Defendants").  (ECF No. 8.)  Service in all of the cases, including this one, has not been successful on all Defendants.

In the Report and Recommendation screening Plaintiff's Complaint, the Court summarized the specific factual allegations of this case as follows:

> In the complaint, plaintiff alleges that he was served contaminated food during dinner on November 27, 2021 at WCI. (Doc. 1-1, Complaint at PageID 15). According to plaintiff, defendant Aramark, Aramark coordinator Woods, John/Jane Doe Aramark supervisor, and other ODRC correctional officers intentionally served plaintiff and other inmates food out of a trash can. (*Id.*). Plaintiff alleges that hours after dinner, he experienced symptoms in the form of upset stomach, diarrhea, and vomiting, which persisted for several days. A correctional officer allegedly informed plaintiff that two inmate food-workers—inmates Edward Smith and Richard Burton—alerted a lieutenant and officer that defendant Woods "had retrieved beans from a contaminated trash can, and had them placed on trays to be served." (*Id.* at PageID 15-16). According to plaintiff, he was informed that Smith and Burton were placed in segregation in an attempt to silence them.

---

[1] Aside from certain Aramark Defendants, Plaintiffs essentially name as Defendants any ODRC employee with whom they came into contact between November 27, 2021 and January 10, 2022.

Plaintiff claims that on December 4, 2021, he filed an informal complaint with defendant deputy warden Luneke concerning the November 27, 2021 dinner. Plaintiff claims that defendant institutional inspector Isaac Bullock subsequently informed plaintiff that the issue "has been verified and addressed" and that "[c]orrective actions have been taken." (*Id.* at PageID 16). Plaintiff alleges that instead of directing staff to send plaintiff to medical, Bullock informed plaintiff that he would have to complete a health service request for his medical needs, which plaintiff claims would take several days.

Plaintiff alleges that he informed defendant Sgt. Maggard how sick he was and that he had not been seen by medical. However, plaintiff claims Maggard disregarded his health and safety. (*Id.*). According to plaintiff, ODRC medical staff refused to see him in an alleged effort to cover up that contaminated food was served and to avoid diagnosing plaintiff. As detailed below, plaintiff alleges that instead of providing him with medical care, defendants attempted to cover-up the incident and retaliated against inmates who sought medical attention or filed grievances. Plaintiff claims he remained in his cell for approximately a week, sick to the point that he was unable to eat, drink fluids, or take a shower. (*Id.* at PageID 17).

Plaintiff alleges that defendant Jane Doe health-care administrator provided a list to prison staff of all inmates who reported stomach issues.[3] According to plaintiff, on December 5, 2021, defendant officer Cook informed plaintiff that he and the other inmates reporting symptoms would not be permitted to leave their cells until they had a conversation with a "white shirt," which plaintiff indicates refers to a major, captain, lieutenant, or sergeant. Plaintiff alleges that defendant Lt. Tatman—sent by defendant captain Agee—subsequently screamed at the inmates reporting symptoms, noting that he had seen their medical complaints and stating that "I'm locking the entire Unit down, because we fired the bitch what else do you want us to do? . . . "You[']r[e] sick so what . . . sleep it the fuck off." (*Id.* at PageID 18). Tatman allegedly attempted to intimidate inmates from going to medical or further reporting their symptoms, threatening that he would make their lives living hell if his "staff gets in trouble over that Aramark bitch" and presented them with a choice to go to medical or remain locked down. (*Id.*).

According to plaintiff, family members of the impacted inmates called the institution, demanding that their family members be seen by medical or they would contact the state troopers. Plaintiff claims that he and nine other inmates were subsequently escorted to medical by defendant Ms. Penunzio. Although he was taken to medical, plaintiff claims that defendants nurse practitioners Sky and Rachel conducted a "fake screening" consisting solely of checking their blood pressure before stating "we called you over here and check on you, that's all we're going to do." (*Id.* at PageID 18). Plaintiff further alleges that instead of providing him with any treatment, the defendant nurses made jokes about the inmates being fed out of the trash can and stated "this is what you signed up for coming to prison." (*Id.* at PageID 19).

Plaintiff claims the inmates were taken from medical and placed on "quarantine status" until December 9, 2021, as a punishment for filing grievances and seeking medical treatment. According to plaintiff, Agee attributed the lockdown to COVID-19, however plaintiff notes that this contradicts Tatman's earlier comments and that none of the inmates were tested for COVID- 19. During the lockdown, which plaintiff claims was only imposed against those who sought medical after Tatman's comments, plaintiff claims inmates were restricted from filing grievances or complaints. (*Id.* at PageID 19-20). Plaintiff further alleges that after he continued to demand to see a doctor and asserted that staff knew he had food poisoning and not COVID-19, the impacted inmates were eventually taken back to medical to see defendant John Doe doctor. According to plaintiff, defendant Penunzio stated "nobody says you all have COVID-19" and did not explain why plaintiff was locked down. (*Id.* at PageID 20). Plaintiff alleges that John Doe Doctor refused to diagnose plaintiff or others, and kept them on "quarantine status," despite failing to explain why they were locked down. (*Id.*). Plaintiff claims defendant warden Mitchell-Jackson was present and spoke with medical staff at this time. According to plaintiff, Mitchell-Jackson yelled at the inmates about having to come into work early because of them and otherwise refused to converse with them.

Plaintiff claims that defendants Luneke, Back, Williams, Macintosh, Wells, and several others subsequently held a "town hall meeting," during which Luneke stated that inmates were not transferring institutions for at least eight weeks, their doors were to remain closed, and no questions were to be answered regarding "Aramark." (*Id.* at PageID 20-21). Plaintiff alleges that defendants placed them on lock-down "to prevent plaintiff and the other inmates from exposing that they were ed contaminated food by Aramark" and in retaliation for filing informal complaints and for seeking information and medical attention in connection with the allegedly contaminated food. (*Id.* at PageID 21-22).

As relief, plaintiff seeks monetary damages. (*Id.* at PageID 24).

(ECF No. 9 at 4-7.)

The Report and Recommendation then recommended that Plaintiff's claims against only two Aramark Defendants, John/Jane Doe Aramark supervisor, and Woods, and only certain ODRC Defendants, including Mitchell-Jackson, Bullock, Sgt. Maggard, Williams, Macintosh, Agee, Back, Tatman, Cook, Wells, Jane Doe health-care administrator, nurse Sky, nurse Rachel, John Doe physician, and Luneke in their individual capacities could proceed.  (ECF No. 9 at 11.) Plaintiff did not file objections to the initial Report and Recommendation.   Accordingly, the

Court adopted the Report and Recommendation in its entirety by Order dated April 15, 2024. (ECF No. 11.)

In the intervening months, service has been completed on only five of the remaining ODRC Defendants, including Bullock, Sky and Tatman and two additional Defendants originally named as Doe Defendants but identified in Plaintiff's service documents by name, Julie Bush, originally identified as Jane Doe health-care administrator, and Dr. William Harlan, originally identified as John Doe physician. (*See* ECF No. 13 at 38, 65; *see also* ECF No. 14.) In an Order noting Plaintiff's ongoing service deficiencies, the Court specifically advised Plaintiff of his obligation under Fed.R.Civ.P. 4(m) and that his failure to complete service within 90 days could result in the recommendation of dismissal of his claims against any unserved Defendants pursuant to that Rule. (ECF No. 12.) Despite being put on notice by the Court of the potential for dismissal, Plaintiff has not completed service on the two remaining Aramark Defendants or certain ODRC Defendants, including Mitchell-Jackson, Sgt. Maggard, Williams, Macintosh, Agee, Back, Cook, Wells, nurse Rachel, or Luneke. For this reason, it is **RECOMMENDED** that Plaintiff's claims against these Defendants be **DISMISSED** pursuant to Rule 4(m).

### III.

In light of the issues raised by the dispositive briefing, the Court finds it prudent to undertake a further *sua sponte* review of Complaint with respect to the remaining Defendants. Although this action survived the initial screen pursuant to 42 U.S.C. § 1915(e) and § 1915A, "**the Court has 'inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment.'**" *Bloodworth v. Timmerman-Cooper*, No. 2:10-CV-1122, 2012 WL 604236, at *2 (S.D. Ohio Feb. 23, 2012), *report and recommendation adopted,* No. 2:10-CV-1122, 2012 WL 3727656 (S.D. Ohio Aug. 28, 2012) (quoting *Mallory v. Eyrich,* 922 F.2d 1273, 1282 (6th Cir. 1991)) (emphasis added). Moreover, Section § 1915(e) grants

6

courts authority to dismiss a case *at any time* if it is frivolous or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B); *Norman v. Granson*, No. 18-4232, 2020 WL 3240900, at *2 (6th Cir. Mar. 25, 2020) (emphasis added); *see also Yoder v. Stevenson*, No. CV 20-12992, 2021 WL 6973839, at *7 (E.D. Mich. Dec. 20, 2021), *report and recommendation adopted,* No. 20-12992, 2022 WL 493284 (E.D. Mich. Feb. 16, 2022) (*sua sponte* dismissing claims not addressed by dispositive motion). Accordingly, the Court reconsiders the initial review and **RECOMMENDS** that the Complaint be **DISMISSED** pursuant to 28 U.S.C. 1915(e) and 1915A, as to all remaining ODRC Defendants and that the pending dispositive motion to be **DENIED as moot**.

### A. Legal Standard

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id.* at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e)[1] as part of the statute, which provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-
>
> *       *       *
>
> (B) the action or appeal--
>
> (i) is frivolous or malicious;

---

[1] Formerly 28 U.S.C. § 1915(d).

(ii) fails to state a claim on which relief may be granted; . . . .

28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Denton*, 504 U.S. at 31.  Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted.

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a).  *See also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)).  Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints."  *16630 Southfield Ltd*., *P'Ship v. Flagstar Bank*, *F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id*. (quoting *Twombly*, 550 U.S. at 570).  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "The plausibility of an inference depends on

8

a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted).  Further, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cnty. Sheriff's Dep't*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  This lenient treatment, however, has limits; "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

B. **Discussion**

1. **Eighth Amendment Conditions of Confinement Claim**

As the above factual recitation confirms, Plaintiff's allegations here involve one instance of experiencing unsanitary food service at WCI on one date – November 27, 2021.  From this wholly isolated incident, Plaintiff has built a lengthy narrative alleging conspiracy, concealment and deliberate indifference, freely ascribing motivations based on little more than what appears to be his belief that someone must be held responsible.  At base, however, the crux of his claim is that an Aramark employee knowingly served him food removed from a trash can, he consumed that food without any awareness of that fact, and he suffered symptoms consistent with what he believes to have been food poisoning.  To be clear, to the extent Plaintiff attempts to assert an Eighth Amendment conditions of confinement claim against any Aramark Defendants, as discussed above, the claims against these Defendants should be dismissed pursuant to Rule 4(m) for Plaintiff's failure to perfect service.  To the extent that Plaintiff asserts that "ODRC's Correctional Officers" had any role in this food service incident, he fails to identify the specific correctional officers responsible.  That failure is fatal to any conditions of confinement claim.  A

defendant's personal liability in an action brought pursuant to 42 U.S.C. § 1983 hinges upon the defendant official's personal involvement in the deprivation of the plaintiff's civil rights. *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003). Indeed, "[e]ven a pro se prisoner must link his allegations to material facts ... and indicate what each defendant did to violate his rights ..." *Sampson v. Garrett*, 917 F.3d 880, 882 (6th Cir. 2019) (citations omitted). Plaintiff has made no attempt to do so here. (*See* ECF No. 8 at ¶¶ 31, 33.) On this basis, Plaintiff's Eighth Amendment conditions of confinement claim against any ODRC Defendants should be **DISMISSED** for failure to state a claim.

Moreover, for the same reasons set forth in the Court's Report and Recommendations issued in the related cases, *see Woods v. Aramark*, Case No. 22-cv-4420, *Burke v. Aramark*, Case No. 22-cv-4421, *King v. Aramark*, Case No. 2:23-cv-156, and *Lawson v. Aramark*, Case No. 2:23-cv-3985, were it necessary for the Court to address the elements of a conditions of confinement claim here, it would fail on its merits. To the extent applicable, the reasoning supporting the recommendations of dismissal of those Plaintiffs' conditions of confinement claims is adopted by reference as a further basis for the recommended dismissal of Plaintiff's claim here.

### 2. Eighth Amendment Medical Deliberate Indifference Claim

Plaintiff also broadly suggests that he was delayed or denied medical treatment for gastrointestinal symptoms in violation of the Eighth Amendment. First, it is necessary to examine the precise nature of the factual allegations supporting this claim. Overall, Plaintiff's description of events is not presented in an easily discernible chronology. Nevertheless, he alleges the following. Hours after being served food removed from a trash can, Plaintiff "started to suffer an upset stomach, vomiting, and diarrhea." (ECF No. 8 at ¶ 32.) "For the next couple

days," he "continued to have severe diarrhea and vomiting." (*Id.* at ¶ 33.) In an affidavit attached to his Complaint, Plaintiff explains that he tried to wait out the illness to avoid being charged money for a medical visit, believing he would "just get better." (ECF No. 8 at 20.) He continued to experience abnormal bowel movements, pain in his stomach and more vomiting, so, at some point, he sent in a medical request form. On that request he wrote "[m]y stomach is upset and I have been having pains for the past couple days." (*Id.*) Without any specificity as to dates, he asserts that "Medical" refused to see him. (*Id.* at ¶¶ 47, 48.) On another unspecified date, he claims that he was seen by "medical" but was not given a diagnosis and was sent back to his unit where he "remained sick for several more days." (*Id.* at ¶ 49.) On December 5, 2021, he was seen by the "medical department" although they did not diagnose him with food poisoning or COVID-19 and left him "to suffer in his cell for days." (*Id.*) Later in his Complaint, he states that he was "taken to Medical" where his blood pressure was tested as a "mush fake screening." (*Id.* at ¶ 61.) He reported his symptoms including "abnormal bowel movements, pain in his stomach, and … vomit[ing] several times during the past week" to Defendants Sky and Rachel. (*Id.* at ¶ 61.) These Defendants "refused to provide medication or to recommend transport to an outside hospital to be checked by a doctor, regarding bacteria or other infections." (*Id.* at ¶ 62.) Further, they did not comply with ODRC policy regarding cases of suspected food poisoning and made jokes at Plaintiff's expense. (*Id.* at ¶¶ 63, 64.) On December 6, 2021, Plaintiff was escorted back to medical after demanding to be seen by a doctor. (*Id.* at ¶ 72.) Plaintiff was seen by Defendant Dr. William Harlan but the doctor failed to diagnose Plaintiff despite his "clear symptoms." (*Id.* at ¶ 77.) Instead, Dr. Harlan kept him on "Quarantine Status" until Thursday December 9, 2021. (*Id.*)

An official violates the Eighth Amendment where he or she acts with "deliberate indifference to an inmate's serious medical needs." *Brawner v. Scott Cnty., Tennessee*, 14 F.4th 585, 591 (6th Cir. 2021). For an inmate to show that prison officials violated the Eighth Amendment by denying medical care, the inmate must show (1) that he or she was deprived of an objectively serious medical need, and (2) that the defendant knew "of and disregard[ed] an excessive risk to [his or her] health or safety." *Farmer,* 511 U.S. 825, 837; *Rhinehart v. Scutt*, 894 F.3d 721, 737–38 (6th Cir. 2018).

To satisfy the first element, or the objective prong, a serious medical need must be more than "mere discomfort or inconvenience." *Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005) (internal quotations omitted). Rather, "[t]he objective component requires the existence of a sufficiently serious medical need." *Broyles*, 478 F. App'x 971, 975. A serious medical need is one that "has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004) (emphasis in original). An injury is sufficiently serious to satisfy the objective component if a reasonable doctor or patient would find it "important and worthy of comment or treatment"; if it "significantly affects an individual's daily activities"; or if its existence causes "chronic and substantial pain." *Sarah v. Thompson*, 109 F. App'x 770, 771 (6th Cir. 2004) (internal citations omitted).

To satisfy the subjective prong, the plaintiff must show that the defendant possessed "a 'sufficiently culpable state of mind,' rising above negligence or even gross negligence and being 'tantamount to intent to punish.'" *Broyles*, 478 F. App'x at 975 (quoting *Horn v. Madison Cty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994)). Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk to an inmate's health, yet recklessly

disregards the risk by failing to take reasonable measures to abate it. Mere negligence will not suffice. Consequently, allegations of medical malpractice or negligent diagnosis and treatment generally fail to state an Eighth Amendment claim of cruel and unusual punishment." *Broyles*, 478 F. App'x at 975 (internal citations and quotations omitted).

Additionally, a plaintiff must demonstrate that the defendant knew of and disregarded an excessive risk to inmate health or safety by showing that (1) he was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and (2) he actually drew the inference. *Farmer,* 511 U.S. 825, 837. The requirement that the defendant subjectively perceived a risk of harm and then disregarded it is "meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).

As alleged here, any medical deliberate indifference claim Plaintiff is attempting to assert fails to meet either prong. First, as Plaintiff has described them, his alleged gastrointestinal issues do not constitute a serious medical need. Indeed, Plaintiff initially did not consider them serious enough to warrant treatment. He attempts to explain that his failure to initially seek treatment was because of the $3.00 co-pay and instructions he received at orientation about only seeking medical treatment if "absolutely necessary." (ECF No. 8 at ⁋ 36.) This explanation, however, only confirms that Plaintiff' symptoms did not demonstrate a serious medical need.

Courts are reluctant to find that occasional gastrointestinal symptoms alone may constitute a sufficiently serious medical need. *Rains v. Wellman*, No. 2:20-CV-32, 2022 WL 18587783, at *7 (W.D. Mich. Dec. 30, 2022), *report and recommendation adopted*, No. 2:20-CV-32, 2023 WL 543075 (W.D. Mich. Jan. 27, 2023) (citing *Sledge v. Kooi*, 564 F.3d 105, 108

(2d Cir. 2009) (finding that the plaintiff failed to produce sufficient evidence that his alleged stomach disorders constituted serious medical needs); *Smith v. Hepp*, No. 18-CV-669-JDP, 2022 WL 1001183 (W.D. Wis. Apr. 4, 2022) ("Stomach distress often is not serious enough to support an Eighth Amendment claim" (citing *Riley El v. Godinez*, No. 13-c-5768, 2016 WL 4505038, at *11 (N.D. Ill. Aug. 29, 2016))). Accordingly, the Court is not convinced that such an experience of gastrointestinal symptoms under the circumstances presented elevates those symptoms to the level of a serious medical need. *Id.*

Moreover, Plaintiff alleges that he was seen by medical staff. Based on his description of events, his claim is more properly characterized as a disagreement as to whether his condition required treatment. Disagreement about the course of treatment does not support a proper claim under § 1983. *Estelle*, 429 U.S. at 107; *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."). Negligence or medical malpractice does not amount to a constitutional violation. *See Farmer*, 511 U.S. at 835-36; *Estelle*, 429 U.S. at 106. Thus, any disagreement Plaintiff had regarding medical staff's decision to place him in quarantine following his report of his gastrointestinal symptoms is insufficient to state a § 1983 claim.

As to the subjective element, Plaintiff wholly fails to establish this element. As with his conditions of confinement claim, Plaintiff's conclusory allegations of deliberate indifference are unaccompanied by any facts suggesting that any ODRC Defendants possessed a "sufficiently culpable state of mind, rising above negligence or even gross negligence and being tantamount to intent to punish." *Broyles*, 478 F. App'x 971, 975. To the extent that Plaintiff claims that

medical staff made jokes at his expense, Plaintiff does not provide any facts suggesting a culpable state of mind. Moreover, disparaging statements do not rise to the level of a constitutional violation. *Washington v. Miami Cnty*., No. 3:20-CV-173, 2022 WL 17326436, at *15 (S.D. Ohio Nov. 29, 2022).

For these reasons, it is **RECOMMENDED** that Plaintiff's claim of medical deliberate indifference be **DISMISSED** for failure to state a claim**.**

### 3. Allegations of HIPAA violations or failure to follow ODRC Policies

Plaintiff also alleges that certain Defendants released his protected health information without his consent. (ECF No. 8 at ¶¶ 50, 52.) Title II of HIPAA, the Health Insurance Portability and Accountability Act of 1996, codified at 42 U.S.C. § 1320a *et seq.,* was created to protect against the unauthorized disclosure of health records and information. *Stokley v. Dismas Charities, Inc*., No. 3:14CV-P30-S, 2014 WL 3721423, at *6–7 (W.D. Ky. July 28, 2014) (citing *Gratton v. United Parcel Serv., Inc.,* No. CV 07–3071, 2008 WL 4934056 (E.D.N.Y. Nov.14, 2008). However, only the Secretary of the Department of Health and Human Services may file suit to enforce its provisions. *Id*. (citing 42 U.S.C. § 1320d–5(d); *Sneed v. Pan Am. Hosp.,* 370 F. App'x 47, 50 (11th Cir.2010)). Private citizens have no standing to sue a covered entity for a violation of HIPAA. *Id*. (citing *Adams v. Eureka Fire Prot. Dist.,* 352 F. App'x 137, 139 (8th Cir.2009) (holding that HIPAA cannot be enforced through either an implied private right of action or through § 1983); *Carpenter v. Phillips,* 419 F. App'x 658, 658 (7th Cir.2011);*Siegler v. Ohio State Univ.,* No. 2:11–cv–170, 2011 WL 1990570 (S.D. Ohio May 23, 2011)).

To the extent that Plaintiff may be suggesting a Fourteenth Amendment violation arising from the alleged disclosure his medical information, the Sixth Circuit narrowly applies the right to informational privacy "only to interests that implicate a fundamental liberty interest." *Stokley,*

2014 WL 3721423, at *6–7 (citing *Bloch v. Ribar,* 156 F.3d 673, 684 (6th Cir.1998)).  Under this standard, the disclosure of a plaintiff's medical information concerning the symptoms of his food poisoning was found insufficient to state a Fourteenth Amendment claim.  *Id.* (citing *See Lee v. City of Columbus,* 636 F.3d 245, 261 (6th Cir. 2011) ("[U]nder our interpretation of privacy rights, we have not yet confronted circumstances involving the disclosure of medical records that, in our view, are tantamount to the breach of a 'fundamental liberty interest' under the Constitution.")).  That conclusion applies here as well.

Plaintiff also claims that various Defendants failed to follow ODRC policy, including regarding testing for food poisoning.  "Failure to follow ODRC policy is "'not in and of itself a constitutional violation.'"  *Stone v. Ohio Parole Bd.,* No. 2:21-CV-884, 2023 WL 155903, at *7 (S.D. Ohio Jan. 11, 2023), *report and recommendation adopted,* No. 2:21-CV-884, 2023 WL 2018897 (S.D. Ohio Feb. 15, 2023) (quoting *McDougald v. Davis*, No. 2:16-CV-545, 2018 WL 1899229, at *7 (S.D. Ohio Apr. 20, 2018)).  "Section 1983 does not provide a remedy for alleged violations of state laws or regulations."  *Id.* (citing *Williams v. Burgess*, No. 5:21-cv-99, 2021 WL 5816830, at *4 (W.D. Ky. Dec. 7, 2021)).  "And, '[c]ourts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure.'" *Id.* (quoting *White v. Perron*, No. 2:20-cv-247, 2021 WL 3855589, at *9 (W.D. Mich. Aug. 30, 2021)). "Thus, the "failure to comply with [a state] administrative rule or policy does not itself rise to the level of a constitutional violation.'" *Id.* (quoting *Williams v. Burke*, No. 2:08-cv-123, 2009 WL 1788374, at *1 (W.D. Mich. June 18, 2009) (collecting cases)).

Accordingly, it is **RECOMMENDED** that Plaintiff's claims for violations of HIPAA or ODRC policy be **DISMISSED** for failure to state a claim.

### 4.  First Amendment Retaliation Claim

Plaintiff also broadly alleges retaliation, although he fails to identify it as a specific claim. According to Plaintiff, this retaliation "consisted of locking the inmates down, not answering their questions, not allowing them to have recreation, when recreation was given it consisted of Plaintiff being allowed out of his cell for a 15 min window to get on the restricted Kiosk or to shower. Most of the time mail was with-held, or not picked up to prevent it from being sent out by the staff." (ECF No. 8 at ⁋ 86.) Earlier in his pleading, he alleges that, while he was "locked down 'quarantined'" he was "restricted from generating new Informal Complaint Resolutions 'ICR's' or Grievances against ODRC of Medical's staff." (*Id.* at ⁋ 70.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Even reading the Complaint generously, Plaintiff's allegations as to any claim of retaliation are non-specific and conclusory. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state ... a claim under § 1983.'" *Thomas v. Michigan Dep't of Corr.,* No. 2:23-CV-191, 2024 WL 1046350, at *7 (W.D. Mich. Mar. 11, 2024) (citations and quotations omitted). Many of Plaintiff's numerous allegations simply do

nothing more than assert the ultimate fact of retaliation, and frequently assert that ultimate fact against unspecified ODRC employees.

This obvious shortcoming aside, Plaintiff's claim of retaliation, when scrutinized, also is wholly contradicted by other allegations in his Complaint.  Such contradiction seriously undercuts the plausibility of such a claim.  That is, while Plaintiff alleges that he was placed in quarantine or, in his view "lockdown," as a form of retaliation, elsewhere in his pleading, he states that medical staff placed him in quarantine.  Such placement would be a reasonable response to Plaintiff's report of continued gastrointestinal symptoms.  (ECF No. 8 at ⁋ 77.)  Indeed, according to Plaintiff, the Health Care Administrator's review of his medical file reflected an assessment "for influenza like illness."  (*Id*. at ⁋ 78.)  Further, although Plaintiff states that while he was in quarantine he was not permitted to use the J-pay system to generate new informal complaints or grievances, he also alleges that, after he realized he was restricted from the Kiosk, he filed an informal complaint resolution against medical in paper form.  (*Id*. at ⁋ 88.)

Finally, although Plaintiff alleges his transfer to CCI, he does not identify this transfer as a form of retaliation.  Importantly, Plaintiff does not have a constitutional right to be housed in a certain facility.  *Dziczkowski v. Anderson Cnty. Det. Facility*, No. 3:23-CV-141-TAV-JEM, 2023 WL 3739069, at *2 (E.D. Tenn. May 31, 2023) (citing *LaFountain v. Harry*, 716 F.3d 944, 948 (6th Cir. 2013) (noting that, absent unusual circumstances, prison officials, rather than judges, should decide where a particular prisoner should be housed)).  Accordingly, under the circumstances here, the Court does not view Plaintiff as attempting to state any constitutional claim arising from this transfer to CCI.

For these reasons, it is **RECOMMENDED** that Plaintiff's retaliation claim be dismissed for failure to state a claim.

### 5. Failure to Train

Under the heading "CLAIM TWO Failed to Train," (ECF No. 8 at ⁋ 99), Plaintiff states the following:

> The Supervisory Defendant's in paragraphs 29 through 97 as if fully rewritten herein have actively engaged in official duties, through the official's own individual actions, have violated the Constitution; the supervisors have abdicated their specific job responsibility, with the 'active performance of the supervisor's individual job function, directly resulting in the constitutional injury. To wit: Implicitly authorized, approved, or knowingly acquiesced" to the underlying constitutional violation, or knowingly acquiesced in the unconstitutional conduct of the offending subordinate against the Plaintiff.

To the extent Plaintiff is attempting to hold any supervisor liable in an individual capacity for the "alleged failure to adequately train employees ... [he] 'improperly conflates a § 1983 claim of individual supervisory liability with one of municipal liability.'" *Poynter v. Whitley Cnty. Det. Ctr.*, 722 F. Supp. 3d 745, 756 (E.D. Ky. 2024) (citing *Harvey v. Campbell Cty.*, 453 F. App'x 557, 563 (6th Cir. 2011)). "Thus, absent personal involvement, a failure-to-train claim against an individual official is properly deemed to be brought against them in their official capacity and treated as a claim against the municipality." *Id.* (citing *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005)). Here, the named Defendants are ODRC employees. ODRC is an arm of the State of Ohio. Accordingly, any theory of municipal liability, including failure to train or supervise, has no application. *Scott v. Michigan,* 173 F. Supp. 2d 708, 714 (E.D. Mich. 2001). And, as the Court previously concluded, claims against the State of Ohio are barred by the Eleventh Amendment. (ECF No. 9 at 8.)

To the extent that Plaintiff is attempting to state a supervisory liability claim, any such claim also fails. "[T]o succeed on a supervisory liability claim, [a plaintiff] must show that 'a

supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.'" *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 865 (6th Cir. 2020) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). This "requires some 'active unconstitutional behavior' on the part of the supervisor." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). In short, a plaintiff must plausibly allege that a supervisory defendant "authorized, approved, or knowingly acquiesced in the unconstitutional conduct ... of his subordinates through the execution of his job functions." *Id.* at 242. This requires allegations of active involvement and a "causal connection." *Crawford v. Tilley*, 15 F.4th 752, 761–62 (6th Cir. 2021). Plaintiff's allegations here are limited to only a formulaic recitation of the elements of any such cause of action. As such, they fail to plausibly suggest active involvement by any supervisory official or any causal connection. Accordingly, the Court disregards these allegations. For these reasons, it is **RECOMMENDED** that Plaintiff's failure to train claim be **DISMISSED** for failure to state a claim.

### 6. Remaining Issues

Plaintiff's Complaint is riddled with other allegations that the Court finds fail to state a claim. For example, Plaintiff accuses certain ODRC Defendants of inaction in response to his complaints or grievances. (*See, e.g.,* ECF No. 8 at ⁋ 82.) However, § 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance. *Waller v. Richardson,* No. 1:23-CV-1224, 2024 WL 4143028, at *7 (W.D. Mich. Sept. 11, 2024) (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).

Plaintiff also alleges threats and the use of degrading language by certain Defendants, including Defendant Tatman.  (*See, e.g.*, ECF No. 8 at ¶¶ 56-58.)  The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions.  *Ivey v. Wilson*, 832 F.2d 950, 954–55 (6th Cir. 1987).

### 7.  State Law Claims

Given that no federal claims remain as to any Defendants, Plaintiff's state law claims should be **DISMISSED** as well.  *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction[.]"); *Harper v. AutoAlliance Intern., Inc.*, 392 F.3d 195, 210 (6th Cir. 2004) ("Generally, if the federal claims are dismissed before trial, the state law claims should be dismissed as well.").

## IV.    CONCLUSION

For the reasons stated above, Plaintiff's motion for an extension (ECF No. 21) is **DENIED**.  It is **RECOMMENDED** that Plaintiff's claims against the unserved Defendants, including the two remaining Aramark Defendants and ODRC Defendants Mitchell-Jackson, Sgt. Maggard, Williams, Macintosh, Agee, Back, Cook, Wells, nurse Rachel, and Luneke be **DISMISSED** pursuant to Rule 4(m).  Further, it is **RECOMMENDED** that Plaintiff's claims against any remaining Defendants be **DISMISSED** for failure to state a claim pursuant to 42 U.S.C. § 1997e(c)(1) and 28 U.S.C. § 1915(e)(2)(B).  Further, it is **RECOMMENDED** the Court decline to exercise supplemental jurisdiction over any remaining state law claims against the Defendants. Finally, it is **RECOMMENDED** that the Motion to Dismiss (ECF No. 18) be **DENIED as moot**.

## <u>PROCEDURE ON OBJECTIONS</u>

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a forfeiture of the right to *de novo* review of by the District Judge and forfeiture of the right to appeal the judgment of the District Court.  Even when timely objections are filed, appellate review of issues not raised in those objections is forfeited.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . ." (citation omitted)).


**DATED:  January 14, 2025**          /s/ *Elizabeth A. Preston Deavers*
                                      **ELIZABETH A. PRESTON DEAVERS**
                                      **UNITED STATES MAGISTRATE JUDGE**